GRAND LODGE LOYAL FRIENDS OF
AMERICA v. LATTIMORE.

No. 8559.

Court of Civil Appeals of Texas. San Antonio.
March 18, 1931.

T. H. Ridgeway, of San Antonio, for appellant.

Chas. J. Greenly, of San Antonio, for appellee.

SMITH, J.

The Grand Lodge of Loyal Friends of America is a benevolent association operating under a charter issued to it by the state, with a local lodge in San Antonio. The association issued a certificate of membership to Lucy Lattimore, whereby it was obligated, under conditions named in the certificate, to pay not exceeding $500 to Margaret E. Lattimore, the designated beneficiary, at the death of Lucy Lattimore. The latter died on October 18, 1929. Upon its refusal to pay the amount of the certificate, Margaret Lattimore brought this suit against the association, and recovered. The association appealed.

Under the provisions of the by-laws of appellant association, a stipulated premium upon the certificate in suit became due on October 1 and delinquent on October 15, and under the contract between the parties default in payment on or before the latter date automatically terminated the membership, and all rights under the certificate were thereby forfeited. It is conceded that the premium was not paid or tendered within this period, and the right to collect the insurance was thereby forfeited, unless revived by a process prescribed in the by-laws of the lodge.

It was further provided in appellant's by-laws that the local secretary had no authority to accept delinquent premiums, such as this, but that such may be paid only to the grand secretary at Dallas, and then only when accompanied by an affidavit of the insured's good health, in which event the grand secretary may accept or reject the premium, at his discretion. Neither of these requirements was met by the insured or those acting for her, in this case.

Three days after the policy had lapsed on account of nonpayment of the premium, and a few hours before the death of the insured on the same day, appellee procured a postoffice money order at Rusk, Tex., for the amount of the delinquent premium, and mailed it to the local secretary at San Antonio, who received it three days later. This tender of the delinquent premium was not made to the grand secretary, as required in the by-laws. It was not accompanied by a certificate of the good health of the insured, as also required; it may be assumed that such certificate could not be fairly secured, since the insured, for some time theretofore in precarious health, was then at the point, or within a very few hours, of death. The local secretary, having no authority to accept this tender in any form, delivered the money order to the national grand master, who refused to accept it in payment of the delinquent premium, and returned it to the local secretary, with instructions to tender it back to the beneficiary. In this the grand master acted within his authority under the by-laws, because, first, he could accept or re-

ject at his discretion; second, the tender of the premium was not accompanied by a certificate of the good health of the insured; and, third, the insured was dead, and the official knew it.

The result is that the insurance certificate had lapsed because of nonpayment of premium, and the conditional option to revive it had not been exercised, and had been waived by noncompliance with the plain terms of the by-laws of the insurer, of which the insured and all beneficiaries were charged with notice, as provided in the contract between the parties.

But appellee, conceding the correctness of the foregoing findings and conclusions, sued and recovered in the court below upon the contention that appellant had waived its right to insist upon the timely payment of current and delinquent premiums.

Appellee contends that, because of a delay in tendering back to the beneficiary the money order covering the delinquent premium, appellant waived its right to forfeit the insurance because of such delinquency. The true facts concerning this delay, and the length thereof, are not clearly shown, but it does appear that the officials to whom such payments were required by the by-laws to be made refused at all times to accept such delinquent premium after its tender, and afterwards surrendered it to appellee's counsel at an undisclosed date. The facts concerning this transaction, so far as they are definitely shown, are not such as to constitute the waiver insisted upon by appellee. These facts should be more clearly shown upon another trial.

The evidence is such as to warrant the implied finding of the trial court that the premiums upon the certificate in question for the months of January, April, May, July, and August, 1929, became delinquent, and, while delinquent, were paid to the local secretary, and transmitted to, and accepted by, the grand officials of appellant with knowledge of the facts, which, of course, had the effect of a waiver by appellant of the right to forfeit the insurance on account of those particular delinquencies. During that period the by-laws of appellant did not require delinquent premiums to be accompanied by affidavit showing the good health of the insured, and those payments were not accompanied by such certificates. Appellee pleaded below, and urges here, that, by accepting those premiums after they became delinquent, appellant waived its right to forfeit the insurance because appellee and the insured afterwards defaulted in the timely payment of the October premium, and failed to tender the required health certificate with the proffered delinquent premium. We think this would be true, ordinarily, for by such course appellant lulled its members into security

against slight lapses in the prompt payment of premiums, leading them to believe that the penalty for such lapses would not be strictly enforced, but would be forgiven, and that the forfeiture authorized by the by-laws would not be insisted upon by the lodge. And, but for the facts we are now about to mention, we would hold outright that, by its course of dealing with the member involved, in permitting her, month after month, to pay her premium, after it became delinquent, directly to the local secretary without any certificate of good health, appellant waived its right to suddenly and without notice withdraw the privilege and begin strictly to enforce the by-laws at a time and under such circumstances as to cut off the beneficiary from the benefits so long maintained by the member to the profit of the lodge.

But it appears that the Grand Lodge, at its national meeting in July, 1929, concluded that it had become desirable, for the better protection of its insurance adjunct, to change its method of handling delinquencies. To that end the Grand Lodge adopted certain amendments to its by-laws, in which it was provided that premiums on insurance certificates should be made quarterly, beginning with the month of October, 1929; that such premiums become due on the 1st days of October, January, April, and July in each year; that a grace period should be allowed to the 15th of said months, and, if such premiums should not be paid on or before the 15th, they should be deemed delinquent.

It was further provided in said amendment to the by-laws that when any member of the lodge "becomes delinquent by failure to pay dues in time, said member or members shall not be permitted to pay their local secretary their delinquent dues, but the member or members may apply to their local secretary for a delinquent health blank, said delinquent member or members will make affidavit of the condition of their health before a notary public, or justice of the peace.

"The delinquent member or members will send their delinquent dues, together with the affidavit and health blank to the National Grand Secretary. On receipt of the delinquent dues, affidavit and health blank; if the National Grand Secretary is satisfied that said member or members are in good health and is not over the age limit, he will accept such member or members' dues and reinstate them. If he is not satisfied that such member or members is a good risk for reinstatement, he has the authority to reject such member or members and refund their money.

"If the National Grand Secretary desires to reinstate said delinquent member or members he may do so, by sending them receipt for the money sent. Upon receipt of the receipt from the National Grand Secretary, the delinquent member or members is reinstated.

The delinquent member or members will present the National Grand Secretary's receipt to their local secretary as evidence of reinstatement. The local secretary will then have authority to collect such member or members' money for the next quarter. No delinquent member or members can be reinstated in any Lodge, Palace or Juvenile Department until notified by the National Grand Secretary of their receipted reinstatement! This recommendation to take effect October 1, 1929."

As stated, said amendment to the by-laws was adopted by the Grand Lodge at its national convention at Dallas in July, 1929, and by its terms became effective on October 1 in the same year. Notice of these amendments was published in the lodge's periodical, and copies were mailed to the several lodges as well as to each member. And, under the law, the members were charged with such notice.

It cannot be gainsaid that this change in the by-laws was induced by the existing lax methods of dealing with delinquent members, was designed to correct, and in the future prevent, just such delinquencies as the member involved here was afterwards guilty of; to effectually deprive local secretaries of any apparent right or power to receive or accept delinquent premiums, and require that they be sent directly to a grand official; to prevent reinstating undesirable risks by requiring delinquents to show present good health before reinstating them. These changes were made as a protection to members who by their own efforts kept in good standing by timely meeting their mutual obligations. These regulations were reasonable, were enacted by the assembled representatives of all the members, as provided in the constitution and by-laws of the order, and were put in effect only after three months' notice to the membership. It must be presumed from the facts that the member in question had actual notice of this change, and she was charged with notice, in any event. She, as well as appellee, the beneficiary, with knowledge of the penalty, were delinquent at the first premium period under the new by-laws, and the custom or waivers theretofore practiced by the lodge under old and abandoned by-laws could not operate to estop the lodge from enforcing the provisions of the by-laws as amended. We hold that under the facts disclosed in the record appellant was not liable, and the judgment must be reversed and remanded for another trial, in consonance with the views here expressed. The case was not so fully developed as to warrant rendition.

It should be added that the certificate provided for payment to the beneficiary in proportion to the funds on hand from current assessments of members, at the time of the death of the insured, not to exceed $500 for all benefits. The evidence indicated that upon this basis, which is enforceable, appellee could not have recovered in excess of $275 in any event. Upon another trial, this phase of the case may be, and, if possible, should be, more clearly developed.

The judgment is reversed, and the cause remanded.